909 So.2d 627 (2005)
Elaine RODRIGUE
v.
LAFOURCHE PARISH SCHOOL BOARD & Cigna Property & Casualty.
Elaine Rodrigue
v.
Lafourche Parish School Board.
No. 2004 CA 1136.
Court of Appeal of Louisiana, First Circuit.
May 6, 2005.
Rehearing Denied June 21, 2005.
*629 Joel Hanberry, Cut Off, for Plaintiff-Appellee Elaine Rodrigue.
Deanne B. McCauley, Covington, for Defendant-Appellant Lafourche Parish School Board.
Before: CARTER, C.J., PETTIGREW, and McDONALD, JJ.
PETTIGREW, J.
In this workers' compensation case, the employer, Lafourche Parish School Board ("School Board"), appeals a judgment awarding claimant, Elaine Rodrigue, $11,500.00 in penalties and $2,300.00 in attorney fees for the School Board's failure to timely pay medical bills and related expenses associated with a work-related injury sustained by Mrs. Rodrigue in 1992. For the reasons that follow, we affirm.

FACTUAL BACKGROUND
In 1983, Mrs. Rodrigue was hired as a paralegal for the School Board. She was assigned to work in the main building of South Lafourche High School. On September 23, 1992, she was severely injured in the course and scope of her employment when she tripped and fell over a rolled up carpet placed in a doorway by a school janitor. Mrs. Rodrigue sustained a fractured cheekbone and eye-socket and ruptured discs in her neck. She was placed under general anesthesia and underwent surgery to wire the multiple fractures in her face. The injury subsequently produced an infection near her brain, for which she was placed on a strong antibiotic, believed to be Tetracycline. The School Board paid weekly compensation benefits until January 1993, when claimant returned to work.
In August 1993, Mrs. Rodrigue's work location was transferred from the school's main building to a metal building that also served as a training facility for welding operations and a storage facility for machinery, diesel, oil, and other chemicals. In this environment, Mrs. Rodrigue was continually exposed to noxious odors and fumes. She began to experience unusual symptoms, such as muscle twitching, numbness, short-term memory loss, dizziness, fatigue, and muscle aches. Mrs. Rodrigue left her employment in September 1994, due to worsening orthopedic problems associated with the trip and fall accident. However, the unusual symptoms she experienced progressively worsened.
Mrs. Rodrigue sought treatment with Dr. William Rea, an Environmental Medicine specialist with the Environmental Center in Dallas, Texas. Dr. Rea determined that Mrs. Rodrigue was suffering from a "damaged detoxification system" due to chemical exposure, chemical sensitivity, inhalant sensitivity, neurotoxicity, rhino sinusitis, and a magnesium deficiency. In his deposition testimony, Dr. Rea opined that the surgery Mrs. Rodrigue underwent to repair her face, coupled with the general anesthesia and strong antibiotics, weakened her detoxification system and left her vulnerable to overexposure to chemicals in the work environment.

*630 PROCEDURAL HISTORY
Mrs. Rodrigue filed a disputed claim for compensation against the School Board and its insurer, and the matter proceeded to trial. The parties stipulated that Mrs. Rodrigue was temporarily totally disabled as a result of the injuries she sustained in the trip and fall accident and that the School Board was paying weekly indemnity benefits associated with that injury. Thus, the sole issue at trial concerned whether the chemical sensitivity condition Mrs. Rodrigue suffered from constituted an occupational disease. On March 20, 1997, the workers' compensation judge ("WCJ") rendered judgment in favor of Mrs. Rodrigue finding that her "occupational disease and related disability resulted from overexposure in the work place" and was "causally related to her employment" with the School Board. The WCJ concluded that the medical and related expenses resulting from the overexposure as prescribed by Dr. Rea were "medically reasonable and necessary" and therefore recoverable under workers' compensation laws. The WCJ further ordered that the School Board would be "responsible for the continuing reasonable and necessary medical care and expenses as recommended by Dr. Rea." According to the record, this judgment was never appealed and thus became a final judgment between the parties.
Thereafter, in September 1999, Mrs. Rodrigue filed a "Motion To Enforce Judgment, Penalties And Attorney's Fees" based on the March 20, 1997 judgment rendered by the WCJ. Mrs. Rodrigue alleged that not only were there delinquent medical expenses that were still outstanding from the original trial, but that there were also medical expenses that had been presented to the School Board for payment after the trial that remained unpaid. In all, there were bills for medical treatment or other expenses related to the chemical overexposure divided into 33 different categories. In connection with this motion, the WCJ entered judgment in favor of Mrs. Rodrigue ordering the School Board to reimburse Mrs. Rodrigue $16,079.36 for unpaid medical and related expenses. The WCJ also assessed multiple penalties of $99,000.00 and attorney fees in the amount of $13,507.94. The School Board appealed the judgment to this court, and we affirmed. See Rodrigue v. Lafourche Parish School Board, 2000 CA 0154 (La.App. 1 Cir. 6/23/00) (unpublished opinion) (hereinafter referred to as "Rodrigue 1"). Thereafter, the School Board applied for a writ of certiorari with the Louisiana Supreme Court, arguing that the multiple penalties based upon various categories of expenses were excessive and should be reduced. The supreme court denied the School Board's writ application.
Mrs. Rodrigue filed a second "Motion To Enforce Judgment, Penalties And Attorney's Fees" in October 2000 based on the failure of the School Board to timely pay medical expenses submitted to it in October and December of 1999. This motion was set for hearing in April 2001 but was subsequently dismissed by Mrs. Rodrigue after the School Board agreed to pay the outstanding medical bills as well as $10,000.00 in penalties and $10,000.00 in attorney fees.
According to the record, Mrs. Rodrigue filed yet another "Motion To Enforce Judgment, Penalties And Attorney's Fees" on March 17, 2003. Mrs. Rodrigue argued that the School Board had again failed to honor its obligation under the original March 20, 1997 judgment to pay "the continuing reasonable and necessary medical care and expenses as recommended by Dr. Rea" and had arbitrarily and capriciously terminated her indemnity benefits without *631 any notice. Mrs. Rodrigue had submitted medical costs and related expenses, broken down into five different categories, totaling $7,047.59, and these expenses remained unpaid at the time Mrs. Rodrigue filed her motion.
The matter proceeded to hearing on September 12, 2003,[1] at which time the parties entered into various stipulations in connection with Mrs. Rodrigue's motion to enforce. The parties agreed that the School Board had received notice of the medical expenses in question on February 3, 2003, and that Mrs. Rodrigue received payment on March 28, 2003. However, the parties had differing positions as to which delay period applied to medical expenses that were due and payable in accordance with the March 20, 1997 judgment. Mrs. Rodrigue argued that pursuant to La. R.S. 23:1201(G), the School Board was required to pay medical expenses within 30 days of receipt of same. To the contrary, the School Board alleged that its payment of the medical expenses 53 days after receipt of same was well within the 60 days allowed by La. R.S. 23:1201(E).
On October 20, 2003, the WCJ rendered judgment in favor of Mrs. Rodrigue as follows:
IT IS ORDERED, ADJUDGED AND DECREED that the plaintiff/employee's, Elaine Rodrigue, Motion to Enforce Judgment is hereby granted.
....
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that applying the thirty (30) day statutory period for payment of medical benefits, with the lack of any evidence of any reason for such delay, penalties are hereby assessed against the defendant/employer, Lafourche Parish School Board in the amount of $11,500.00, as well as attorney fees in the amount of $2,300.00.
The School Board timely filed a motion for new trial, which motion was denied by the WCJ. The instant appeal by the School Board followed.

ASSIGNMENTS OF ERROR
On appeal, the School Board raises the following assignments of error for our review:
1. The worker's compensation hearing officer erred in holding that Elaine Rodrigue was entitled to an award of penalties and attorney's fees when the record lacks evidence of reasonableness and medical necessity of ongoing medical expenses incurred.
2. The worker's compensation hearing officer erred in assessing the employer with multiple penalties in the sum of $11,500.00 for failure to pay medical benefits.
3. The worker's compensation hearing officer erred in awarding $2,300.00 in attorney's fees.

ASSIGNMENT OF ERROR NUMBER ONE

Application of La. R.S. 23:1201(G)
In its first assignment of error, the School Board contends the WCJ erred in applying the 30-day statutory period found in La. R.S. 23:1201(G) to the timeliness of the payment of medical expenses to Mrs. Rodrigue. Rather, the School Board maintains, the WCJ should have applied La. R.S. 23:1201(E), which provides that medical benefits must be paid within 60 days after the employer receives notice of *632 same. Moreover, the School Board argues that even if this court were to "assume subsection (G) of La. R.S. 23:1201 contains the applicable time delay for payment of medical expenses in this matter, strict construction of the language of that statute would reveal that penalties and attorneys fees are only owed if the award is not paid within thirty (30) days of the date in which it becomes due." The School Board alleges "payment of the medical bills submitted after judgment do not `become due' until thirty (30) days after the demand and submission of those medical records are submitted to the insurance carrier." Thus, the School Board argues, "[s]ince the medical expenses were not submitted to the adjuster until February 3, 2003, under any reading of the statute, reimbursement of the medical bills submitted would not become due until March 5, 2003." We disagree.
Initially, we note that La. R.S. 23:1201(G) clearly sets forth that an employer is liable for penalties and attorney fees if it does not pay an award payable under a final, nonappealable judgment within 30 days. The statute provides as follows:
G. If any award payable under the terms of a final, nonappealable judgment is not paid within thirty days after it becomes due, there shall be added to such award an amount equal to twenty-four percent thereof or one hundred dollars per day together with reasonable attorney fees, for each calendar day after thirty days it remains unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such award, unless such nonpayment results from conditions over which the employer had no control. No amount paid as a penalty under this Subsection shall be included in any formula utilized to establish premium rates for workers' compensation insurance. The total one hundred dollar per calendar day penalty provided for in this Subsection shall not exceed three thousand dollars in the aggregate.
As previously recognized by this court in McCoy v. KMB Transport, Inc., 98-1018, p. 6 (La.App. 1 Cir. 5/14/99), 734 So.2d 886, 890, writ denied, 99-2295 (La.11/24/99), 750 So.2d 986, the application of section 1201(G) concerns an employer's obligations that arise not because of the claimant's accident nor because of the claimant's prior employment with the employer, but rather because of the employer's conduct after a final judgment. In the instant case, the School Board's untimely payment (the School Board received notice of the medical expenses in question on February 3, 2003, but Mrs. Rodrigue did not receive payment until March 28, 2003, some 23 days beyond the applicable statutory period) of post-judgment medical expenses is the conduct that gave rise to Mrs. Rodrigue filing the March 17, 2003 "Motion To Enforce Judgment, Penalties And Attorney's Fees." Thus, Section 1201(G) is clearly applicable herein. Any argument to the contrary that Section 1201(E) should be applied is without merit.

Reasonable and Medically Necessary Expenses
Another argument raised by the School Board in connection with its first assignment of error is that Mrs. Rodrigue did not present any evidence "to establish that at the time the $7,047.59 in medical expenses were incurred that they were reasonable and medically necessary, given [Mrs. Rodrigue's] condition at that point in time." Citing La. R.S. 23:1203, the School Board contends that Mrs. Rodrigue bore the burden of proving that the treatment recommended by Dr. Rea was reasonable and medically necessary. Thus, the School Board asserts, Mrs. Rodrigue's motion to *633 enforce should have been denied for lack of supporting evidence.
As set forth by the WCJ in its written reasons for judgment denying the School Board's motion for new trial, the March 20, 1997 judgment was controlling in determining the School Board's obligations concerning Mrs. Rodrigue's medical expenses. The WCJ noted as follows:
This Court made a specific finding in the original hearing that the medical and related expenses resulting from the overexposure as prescribed by Dr. Rea... are medically reasonable and necessary. Thus, the obligation of the employer herein post-judgment regarding medical expenses is not the general open-ended question of what any particular medical person would think is reasonable and necessary, but it is tied to the recommendations of Dr. Rea, claimant's treating physician. Essentially, this Court determined that whatever Dr. Rea recommended for treatment of overexposure is reasonable and necessary and is an obligation of the employer.
Prior to the hearing on the March 17, 2003 motion to enforce, the parties entered into various stipulations, including one regarding the medical expenses in question. The parties agreed that if Mrs. Rodrigue were to testify, her testimony would be that the medical expenses were incurred in connection with recommendations and treatment by Dr. William Rea. As previously noted, the award from the final judgment rendered on March 20, 1997 was for "the continuing reasonable and necessary medical care and expenses as recommended by Dr. Rea." The wording of the March 20, 1997 judgment controls the obligation of the School Board in the instant case. Essentially, the WCJ determined that whatever Dr. Rea recommended for treatment of Mrs. Rodrigue is reasonable and necessary. Thus, based on the stipulation of the parties, the medical expenses in question are clearly brought within the purview of the March 20, 1997 judgment without the necessity of Mrs. Rodrigue submitting additional evidence. It is clear that no legitimate question existed as to which bills were due under the March 20, 1997 judgment. We find no merit to the School Board's arguments concerning this issue.

ASSIGNMENT OF ERROR NUMBER TWO
In its second assignment of error, the School Board argues the WCJ erred in awarding multiple penalties for what should have been considered a single violation. The School Board argues that its adjuster issued one check in payment of the medical expenses in question and made only one decision as to the timing of payment. Thus, the School Board maintains, Mrs. Rodrigue was only entitled to a single penalty of $100.00 per day for each day the lump sum payment was delayed.
It is well settled in Louisiana law that factual findings in a workers' compensation case, including the award of statutory penalties and attorney fees, are subject to the manifest error or clearly wrong standard of appellate review. King v. Willstaff Worldwide, Inc., 2002-2625, p. 2 (La.App. 1 Cir. 9/26/03), 855 So.2d 981, 982, writ denied, XXXX-XXXX (La.1/30/04), 865 So.2d 83. Awards of penalties and attorney fees in workers' compensation cases are essentially penal in nature, and are imposed to deter indifference and undesirable conduct by employers and their insurers. Williams v. Rush Masonry, Inc., 98-2271, pp. 8-9 (La.6/29/99), 737 So.2d 41, 46. Although the benefits conferred by the Louisiana Workers' Compensation Act are to be liberally construed, penal statutes are to be strictly construed. *634 We note that La. R.S. 23:1201(G) is a penal statute that must be strictly construed. Trahan v. Coca Cola Bottling Co. United, Inc., XXXX-XXXX, p. 17 (La.3/2/05), 894 So.2d 1096, 1108.
In Rodrigue 1, we upheld an award of multiple penalties against the School Board in a very similar factual situation. As previously discussed, Mrs. Rodrigue filed a motion to enforce in September 1999, urging that the School Board had failed to pay not only delinquent medical expenses that were still outstanding from the original trial, but also medical expenses that post-dated the March 20, 1997 judgment. According to the record, there were 33 different categories of bills presented for medical treatment or other expenses associated with Mrs. Rodrigue's chemical overexposure. After considering the evidence in the record, the WCJ entered judgment in favor of Mrs. Rodrigue, ordering that the School Board reimburse Mrs. Rodrigue for the outstanding medical bills and related expenses and assessing multiple penalties of $99,000.00 and $13,507.94 in attorney fees. The School Board appealed to this court. We affirmed the judgment, and the Louisiana Supreme Court refused to accept the writ application filed by the School Board.
Based on our decision in Rodrigue 1, we must consider whether it is appropriate to address this assignment of error or whether review is affected by the "law of the case doctrine." Under the "law of the case doctrine," an appellate court generally will not, on a subsequent appeal, reconsider its earlier ruling in the same case. Cole v. State, Dept. of Public Safety and Corrections, 2003-2269, p. 3 (La.App. 1 Cir. 6/25/04), 886 So.2d 463, 465, writ denied, XXXX-XXXX (La.10/29/04), 885 So.2d 589. We note, however, that where a prior disposition is clearly erroneous and will create a grave injustice, it should be reconsidered. Id. The reason for the "law of the case doctrine" is to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. Held v. Aubert, XXXX-XXXX, p. 17 (La.App. 1 Cir. 5/9/03), 845 So.2d 625, 639 (citing Louisiana and Land and Exploration Company v. Verdin, 95-2579, p. 4 (La.App. 1 Cir. 9/27/96), 681 So.2d 63, 65, writ denied, 96-2629 (La.12/13/96), 692 So.2d 1067, cert. denied, 520 U.S. 1212, 117 S.Ct. 1696, 137 L.Ed.2d 822 (1997).
In considering this doctrine and its application herein, we note that the history of this case is such that in accordance with the WCJ's March 20, 1997 judgment, Mrs. Rodrigue would submit medical bills and other expenses associated with her injuries to the School Board grouped into various categories for payment. The School Board repeatedly failed to timely pay the bills, requiring Mrs. Rodrigue to file numerous motions to enforce the judgment. When asked to consider the appropriate penalties for the School Board's infractions, the WCJ would assess penalties individually on each category of expensing, resulting in multiple penalties. In Rodrigue 1, this court was asked to review the WCJ's award of $99,000.00 in multiple penalties against the School Board, and we affirmed same. Although ably argued by the School Board on appeal in the instant case, a review of the instant record reveals that the WCJ's award of multiple penalties and this court's subsequent review of same are without error. Thus, by operation of the "law of the case doctrine," we decline review of this issue on appeal.

ASSIGNMENT OF ERROR NUMBER THREE
Finally, the School Board argues that the WCJ erred in awarding $2,300.00 *635 in attorney fees because Mrs. Rodrigue failed to present any evidence to establish her claim for attorney fees as required under La. R.S. 23:1141. The School Board contends that Mrs. Rodrigue could only recover for those attorney fees necessarily incurred to collect the outstanding medical expenses. Noting that Mrs. Rodrigue's attorney was only required to prepare and file a motion to enforce judgment before the medical bills were paid, the School Board maintains that "a six page Motion should not be valued at $2,300.00." We find no merit to this argument.
The WCJ's award of attorney fees pursuant to La. R.S. 23:1201(G) is a factual determination and should not be disturbed on appeal unless clearly wrong. Cade v. Safety Council of Louisiana Capital Area, XXXX-XXXX, p. 6 (La.App. 1 Cir. 12/31/03), 868 So.2d 744, 748. In Smith v. Phillip Morris, U.S.A., XXXX-XXXX, p. 10 (La.App. 1 Cir. 12/20/02), 858 So.2d 443, 450, this court discussed the propriety of an award of attorney fees in workers' compensation cases as follows:
[Attorney fees] are not intended to make the injured party whole, but rather to discourage a particular activity on the part of the offending party. The purpose for attorney fees is to combat indifference by employers and insurers toward injured employees.
In a workers' compensation case, the WCJ is allowed to call upon its own experience and expertise in determining the amount of time and effort that a lawyer has put into the preparation of a case. The factors to be considered in the imposition of an award for attorney's fees in workers' compensation cases include the degree of skill and work involved in the case, the amount of the claim, the amount recovered, and the amount of time devoted to the case. [Citations omitted.]
It is clear from the record in the instant case that the School Board has repeatedly failed to honor its obligation under the March 20, 1997 judgment to pay Mrs. Rodrigue's "continuing reasonable and necessary medical care and expenses as recommended by Dr. Rea." Including the penalties and attorney fees awarded in connection with the March 17, 2003 motion to enforce, the School Board has been ordered to pay over $120,000.00 in penalties and over $25,000.00 in attorney fees pursuant to La. R.S. 23:1201(G). The same WCJ has been involved with this case from the very beginning and is certainly cognizant of the time and effort required of Mrs. Rodrigue's attorney in preparation of this case, i.e., filing of pleadings, appearing in court, presenting oral arguments, and filing a post-trial brief. Accordingly, based on the unique facts and circumstances of this case, we find no error in the WCJ's award of $2,300.00 in attorney fees.

CONCLUSION
For the above and foregoing reasons, we affirm the judgment below, granting Mrs. Rodrigue's motion to enforce and awarding penalties of $11,500.00 and attorney fees of $2,300.00. All costs associated with this appeal are assessed against the School Board.
AFFIRMED.
MCDONALD, J., agrees with the attorney fee award, but dissents as to the penalties and would award a single penalty.
NOTES
[1] At the September 12, 2003 hearing, the WCJ also considered an exception raising the objection of res judicata filed by Mrs. Rodrigue and a motion in limine filed by the School Board. However, neither of these issues has been raised in the instant appeal.